**JAMES TALCOTT, INC.**

v.

**ALLAHABAD BANK, LTD., Bank of Baroda, Ltd., Bank of Tokyo, and City Trade & Industries, Ltd.**

**Civ. A. No. 2046.**

United States District Court,
S. D. Georgia,
Savannah Division.

Oct. 17, 1969.

Order on Motion to Quash Service
of Process Oct. 24, 1969.

Final Judgment Granting Defendant
Banks' Motion for Summary
Judgment Nov. 21, 1969.

Francis J. Ryan, Jr., New York City, Joseph M. Oliver, Savannah, Ga., for James Talcott, Inc.

Malcolm Maclean, Savannah, Ga., for Allahabad Bank, Ltd. and other Banks.

W. Ward Newton, Lyons, Ga., for City Trade & Industries, Ltd.

George W. Williams, Savannah, Ga., for New Central Jute Mills Co., Ltd.

John W. Sognier, Savannah, Ga., for Sheriff Carl Griffin.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

TUTTLE, Circuit Judge.*

■ The Court has for disposition the motion for summary judgment filed on behalf of Allahabad Bank, Ltd., Bank of Baroda, Ltd., and Bank of Tokyo. The motion requests a judgment by this Court distributing funds amounting to approximately $650,000.00 now in the hands of the Clerk of the Court as a result of a deposit made by the Plaintiff Talcott, Inc. in connection with its bill of interpleader seeking a determination of the proper disposition of this very substantial sum of money as between the three named banks and the City Trade and Industries, Ltd. and any other claimants who might intervene in the action.

The movants (hereinafter the Banks) based their contention that they are entitled to the entire fund upon the undisputed fact that litigation has now terminated in the Courts of New York State by a decision of the New York Court of Appeals in which City Trade & Industries, Ltd. (hereinafter CTI) has sought relief in the nature of an accounting from New Central Jute Mills Co., Ltd., an Indian Corporation, and which litigation the Banks contend made a final determination against certain contentions of CTI which the Banks now rely on as creating collateral estoppel which prevents CTI from asserting in this Court its only contention standing in the way of final judgment on their motion for

---

* Judge, United States Court of Appeals, designated to sit in this court.

summary judgment in favor of the Banks.

The parties are not in disagreement as to the requirement for the granting of a motion for summary judgment. Such a motion cannot be granted unless the Court can properly determine that there is no material issue of fact which, if proven by the opposing party, would entitle it to a judgment. In order to consider whether such an issue remains in this case it is necessary to consider at some length the history of the relationship between the parties. By reference to the complaint filed by CTI in this New York litigation and which, in view of CTI's position in this case, may be taken as true against it, it appears that the following abbreviated statement in an earlier order entered by the Honorable Frank M. Scarlett dated the 9th day of March, 1967, is fully supported and does not involve any conflict between the parties on any material issue.

"In India there is a concern that produces jute, which is a backing used for rugs and carpets, named New Central Jute Mills. During 1959 and March, 1964, or substantially this period of time, City Trade and Industries, Ltd., a New York Corporation, was sales agent for New Central Jute Mills in the United States and Canada.

In 1964, these two parties severed their business relationship and entered into an agreement. Their business relationship has not been described to the Court in great detail, but from what has been set forth it worked in substantially the following manner. New Central would produce a quantity of jute and export it to the United States. It would be stored in various warehouses located in different states to the account of CTI. New Central watched the market for the best jute prices; often it would direct CTI to hold the jute in storage pending a more favorable market. Without selling the jute within a period of approximately 90 days from date of export, New Central would require outside funds. James Talcott, Inc. entered the picture as a factor and apparently took a first security interest in quantities of jute to secure funds it advanced.

There was another feature to the financing and that was the drawing of drafts by New Central upon CTI. Apparently, New Central would draw a draft upon CTI and if New Central would not allow the jute to be sold within a definite period of time, CTI would not honor the draft, if it had accepted it, or would call in James Talcott, to take a security interest in the jute, and to pay the draft that CTI had accepted.

When New Central and CTI ceased doing business together in 1964, they agreed that CTI was to return all inventory to New Central at cost and expenses, that CTI was to pay the outstanding drafts of over $900,000.00 and that cost and expenses to which CTI was entitled was approximately 3 and ½ million dollars.

CTI contends that New Central never paid the stated account, and that it proceeded to sell the jute over which it had control, and reduced the debt owing to it from New Central to approximately 1 and ½ million dollars.

At this point, in September, 1964, the Allahabad Bank and the Bank of Baroda filed a suit of attachment in Chatham County Superior Court; at the least, an attempted attachment was made of property stored in the Georgia Ports Authority warehouse to the account of CTI. Later, the Bank of Tokyo was added as a party plaintiff. In addition, James Talcott, Inc., was brought into the proceedings by a process of garnishment.

On or about November 30, 1964, the parties entered into an agreement whereby various quantities of jute cloth were to be released to the order of James Talcott, Inc. Apparently, all the jute stored in Savannah at the Georgia Ports Authority warehouses was sold, at the order of James Talcott, Inc., and after satisfying its liens, Talcott has paid into Court the excess funds from the sale of the jute."

The last clause in Judge Scarlett's recitation of facts needs clarification to the extent that Talcott paid the funds into this Court, not in response to the garnishment, but by an original suit in interpleader in which it alleged that it was subject to claims not only by the Indian Banks but by CTI and possibly other claimants. It originally paid into Court the sum of $622,367.76. It later paid in the sum of approximately $45,000.00 additional which it conceded to be due to some of the parties at interest by reason of accrual of interest. Originally the funds were held by the Clerk of this Court in local banks without drawing interest but by subsequent order of this Court the funds were placed at interest in the same banks. The interest currently being earned is not equal to the interest claimed by the Indian Banks to be currently accruing on its drafts, which are the basis of the litigation.

Further facts necessary to an understanding of the case are that at a time when the business of the several parties was continuing Allahabad Bank held drafts drawn by Central Jute and accepted by CTI in the principal sum of $343,915.26, the Bank of Baroda held similar drafts in the amount of $26,850.94 and the Bank of Tokyo held similar drafts in the amount of $169,372.31. The principal amount of these claims is $540,138.51.

By their answers to the bill of interpleader the Banks claimed the full amount paid in as due them on their drafts duly accepted by CTI, payment of which had been refused. They also sought protest fees totalling $150.79.

CTI, after first contesting jurisdiction and venue, nevertheless later waived these points, and made its answer claiming the entire fund upon the following theory: CTI contended that, in point of fact, the claims by the Indian Banks were subject to all defenses existing between CTI and New Central Jute because, so it contended, these drafts were not in fact held by the Banks as holders for value in due course. This contention was based upon the allegations that the Banks had either been paid the amount of the drafts by New Central Jute or had in some other manner, by compromising the relations between New Central Jute and CTI, lost their position as holders for value in due course.

It is apparent that such a contention, attacking negotiable instruments held by the Banks could hardly be proved by counter-affidavits with the technical requirements of the federal rules effectively to deny the affidavits supporting a motion for summary judgment on behalf of the Banks as holders of negotiable instruments, apparently valid on their face. To meet this situation, therefore, CTI served notice of taking depositions of the principle officers of the Banks in Savannah, Georgia and filed voluminous interrogatories. Equally detailed objections to the taking of depositions and the interrogatories were filed by the Banks, and these issues have not been resolved.

CTI also filed a counterclaim against the plaintiff Talcott in the interpleader action which, in oral argument before the Court counsel stated is based solely on the contention that Talcott owed interest on the amount it held in excess of Talcott's own claims during the period prior to paying the funds into Court and, possibly, subsequent to that date, to the extent that the funds drew either no interest or less than the legal rate after deposit in the Court.

Upon subsequent motion by Talcott, Judge Scarlett entered an order authorizing payment of $25,000 attorneys' fee for Talcott's counsel and discharging Talcott from any further liability with respect to the funds deposited. The order made no reference to, and, therefore, did not in any way dispose of the counterclaim of CTI against Talcott. I construe the order as merely discharging Talcott from any further liability *with respect to the funds actually deposited by it in this Court.*

The motion for summary judgment now before the Court is, as stated above,

based upon the result from litigation in the State of New York. The Indian Banks contend that in that litigation the New York Courts have expressly held that they are holders for value in due course of the drafts upon which they are proceeding here, and that there is no merit in the contention of CTI that the proceedings in this Court were instigated by, or are being carried on for the benefit of, New Central Jute which is the true party at interest in the litigation and the Indian Banks.

The facts relating to the New York litigation are somewhat complex, but they can be capsulated. CTI sued Central Jute for breach of a contract and for an accounting when their relations terminated in a manner which CTI contended was contrary to the terms of their then existing contract under which they were acting as the agency in the United States for the sale of New Central Jute's products. New Central Jute filed a motion in the New York Supreme Court, in which Court the case was pending, seeking a stay of the suit unless and until CTI, the plaintiff, carried out the agreement in the contract between the two parties which New Central Jute contended required arbitration

of any such dispute prior to litigation. In opposing New Central's motion for a stay pending arbitration CTI submitted an affidavit by one Gabriel Kaslow, Esquire in which Mr. Kaslow asserted that on March 9, 1964, New Central and CTI entered into a written letter agreement whereby the account between them was established as of February 11, 1964 substantially as follows:

"(a) As of date of February 11, 1964 there was on hand in the United States inventory of wide jute of 3,271,673 yards and 1,260,238 yards of narrow jute of which New Central was entitled to possession upon payment to CTI of the agreed sum of $3,447,393.43.

(b) There were then outstanding unpaid *drafts* aggregating $919,134.43 drawn by New Central on CTI *and accepted by CTI for the accommodation of New Central* above set forth and upon CTI's receipt of the aforesaid sum of $3,447,393.43 CTI was to pay said outstanding drafts." (emphasis added)

The affidavit then says, "In March, 1964 and thereafter, except as hereinafter set forth, said drafts were alleged to be held by the following banks in the amounts set opposite their names:

| | |
|---|---|
| State Bank of India, an agency of the Reserve Bank of India | $ 378,995.92 |
| Allahabad Bank | 343,915.26 |
| Bank of Tokyo, Calcutta Branch | 169,372.31 |
| Bank of Baroda, Ltd. | 26,850.94 |
| | $ 919,134.43 |

"At this point, brevity requires me to say simply, that New Central repudiated and disavowed its aforesaid letter agreement of March 19, 1964 and therefore CTI did not pay the aforesaid drafts. New Central through the medium of three of the banks aforementioned (other than the State Bank of India) has literally litigated CTI's jute business into ruin as hereinafter related." It is to be noted that except for the first item

above listed these outstanding drafts represent the identical amounts claimed here by the Indian Banks.

Initially, in his affidavit, Mr. Kaslow stated that he opposed the motion "upon the following grounds." We are not concerned with numbers 1 and 3 but number 2 reads as follows: "At the instigation of New Central and under the direction and control of New Central, CTI has been the subject and victim of

litigation in the Georgia State Courts since September 19, 1964 * * * wherein *certain banks domesticated in India have sued CTI* by attachment process *for the sole and exclusive benefit of New Central.*" (emphasis added)

In further elaboration of this charge Mr. Kaslow stated, "On behalf of CTI I hereby charge that Mr. Carroad [alleged to be an agent of New Central Jute] at his own instance and for his own benefit and at the instance and request of New Central, proceeded to retain counsel at Savannah, Georgia to commence suit by attachment at Savannah, Georgia of the substantial inventory of New Central Jute which had been the subject of dealing between CTI and New Central, Savannah being a principal port of entry for jute, *although the Georgia * * * litigation was instituted in the names of banks as plaintiffs against CTI as defendant. I hereby further charge that such suits were commenced solely and exclusively upon the joint instigation of Mr. Carroad and New Central.*" (emphasis added)

After stating the facts already alluded to above to the effect that the parties agreed to let Talcott dispose of the jute and hold the proceeds, Mr. Kaslow said, "I wish to conclude with respect to the State Court actions in Georgia and Delaware, by stating that *all of them were instigated by New Central.*"

Mr. Kaslow attached as an exhibit to his affidavit a letter which he had written to New Central Jute Mills which he stated to be still his position, and in this letter he stated, "In your letter you referred to eighteen bills of exchange aggregating $378,995.92 which you state were accepted by CTI and held by you. I wish immediately to state that CTI did accept said eighteen bills of exchange for your accommodation and that such bills of exchange which are held by you are subject to the offsetting indebtedness owing by you to CTI which you have refused to pay, notwithstanding that your indebtedness to CTI far exceeds not only the eighteen bills of exchange aggregating $378,995.92 referred

to in your letter of July 21, 1966, but also exceeds all the other outstanding bills of exchange *accepted by CTI for your accommodation aggregating $540,-139.17.* [This obviously refers to the bills of exchange here in issue]. As you are well aware, we have persistently advanced the proposition on behalf of CTI that there are no holders in due course of such outstanding bills of exchange and that in fact all of them are owned and held by you, and therefore that all of them are subject to being offset by your indebtedness to CTI * * * In the view of CTI, in which we concur, the remaining bills of exchange aggregating $540,139.17 [the bills here in issue] which are the subjects of legal actions against CTI prosecuted in the State of Georgia, United States of America, in the names of Allahabad Bank, the Bank of Tokyo, Calcutta Branch, and Bank of Baroda, are in fact actions brought by you against CTI in the State of Georgia, notwithstanding that in the names of said banks the assertion has been made in the Georgia Courts that said banks are holders in due course of said bills of exchange, notwithstanding that the same appear to be owned and held by you, and are therefore subject to being offset by your indebtedness to CTI."

New Central Jute's counsel Burton DeFren, Esquire responded to this affidavit in which the following statement was sworn to: "The second basis for opposition to the within motion is that plaintiff has been sued in the State Courts of Georgia and Delaware concerning transactions arising out of the contract. This ground is interesting, but neither informative nor relevant. *The fact of the matter is that the action in the State Courts of Georgia and Delaware were not instigated or instituted by defendant herein, but by several banks which are holders in due course of certain drafts made by plaintiff herein payable to the order of the defendant herein and accepted by plaintiff and thereafter negotiated by defendant herein to said banks.* No matter how hard plaintiff may try to merge defendants'

identity with the banks, the fact is otherwise. *The banks purchased the drafts from defendant in the normal course of business and attempted to receive payment thereon from plaintiff. Upon dishonor of the drafts by plaintiff the banks brought suit against defendant.* (emphasis added) Reams and reams of paper could not vitiate that the banks were and are holders in due course and that plaintiff herein is the debtor primarily liable under said drafts. Plaintiff made and accepted the draft as consideration for merchandise purchased from the defendant. Defendant thereafter negotiated those drafts for value to the banks. Defendant and the banks are separate and independent entities. One is not the alter ego of the other."

Mr. Justice Sarafite of the Supreme Court of New York passed on the motion filed by New Central Jute for an order to compel arbitration after considering the foregoing affidavits. He held that the contention of CTI that the contract between it and Central Jute provided for an unlawful price fixing arrangement could not be passed on on the papers but should be heard on the merits. He then overruled the contention of an alleged waiver, and then said, "similarly, the claim that defendant has waived its right to arbitration, by having 'fostered' litigation against plaintiff in another form, is without merit. It is sufficient to note that *the actions instituted in these other forums were brought by banks who were holders in due course of drafts executed by plaintiff.* It strains credulity to conclude, as plaintiff urges, that these other parties are defendant's 'alter egos' acting at [its] instigation and command.' " (emphasis added)

Thus the New York trial court held that two of the grounds alleged for denying a stay for arbitration as required in the contract were without merit. One of these is the very issue pending here, i.e. that the Indian Banks are not holders in due course and are not suing in good faith but are acting as alter egos for the New Central Jute Company.

The Court held that the issue of whether there had been illegal price fixing would have to be tried. Subsequently, that issue was tried and the Supreme Court Judge, hearing that issue, held, on a stipulated state of facts, that there was nothing illegal in the contract or in the course of dealings pursuant to it. This ruling was appealed to the Appellate Division of the New York Supreme Court which affirmed and, on appeal to the Court of Appeals, CTI again urged the same ground which had been held adversely to it and with which we are here concerned, that is that New Central Jute had waived its right to arbitration under the contract because it had caused these three banks to pretend to act as holders in due course and filed proceedings of attachment in the Georgia State Court and later to claim in the interpleader action that they were entitled to the funds as holders in due course.

The New York Court of Appeals dealt with this matter in its opinion in the following language: "CTI advances three points on this appeal. The argument is made at the outset that the defendant is precluded from asserting its rights to arbitration because of its alleged involvement in prior litigations against the plaintiff in other jurisdictions through various 'alter egos.' Specific reference is made to prior proceedings conducted in the Georgia and Delaware State Courts. Both actions were attachment proceedings, brought by two Indian Banks against quantities of jute backing located in the respective jurisdictions. In each case the bank asserted its status as holder in due course of a draft received by them from New Central. The status of 'alter ego' is inferred by plaintiff from the participation of the defendants' attorney as an advisor to these foreign banks in the attachment proceedings. Without additional evidence to support it, this claim must be dismissed as meritless. As Justice Sarafite observed, after setting forth the exact nature of these proceedings, "It strains credulity to conclude, as plaintiff urges, that these other parties

are defendants' 'alter egos' acting at [its] instigation and command."

The Court then proceeded to the second and third contentions, finally concluding that the objection of CTI to the claim by New Central Jute of the right to have arbitration was meritless on all three grounds.

There, of course, are no issues of fact as to the existence of the litigation in the New York Courts nor as to what actually transpired there. The only question, so far as this motion is concerned, is: Did it resolve the issue that is now sought to be raised by CTI again to the effect that the Indian Banks are not the holders in due course because they are acting merely as alter egos for New Central Jute and attempting to circumvent the final accounting with CTI. An excellent discussion of "the principal somewhat undescriptively called 'collateral estoppel'" is contained in a scholarly opinion written by Judge Friendly on behalf of the Court of Appeals for the Second Circuit in Zdanok v. Glidden Company, Durkee Famous Foods Division, 2d Ct. 1964, 327 F.2d 944, where at page 954 we find the following discussion touching on the question whether a prior decision on the precise point in issue can be urged as an estoppel to a party who was a party to the earlier litigation. The Court said that the old doctrine that estoppels must be "mutual," that "Nobody can take benefit by a verdict, who had not been prejudiced by it, had it gone contrary," citing Bentham Rational of Judicial Evidence in Seven Works of Jeremy Bentham, 171 (Bowring Ed. 1843), quoted in Curie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan.L.Rev. 281, 284, Footnote 6 (1957), "has been much eroded in recent years." The Court then says, "Perhaps the leading federal decision is Judge Hastie's in Bruszewski v. United States, 181 F.2d 419 (3d Cir.), cert. denied 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950), which this court followed in Adriaanse v. United States, 184 F.2d 968 (2 Cir. 1950), cert. denied 340 U.S. 932, 71 S.Ct. 495, 95 L.Ed. 673 (1951). We see no purpose in multiplying citations since it is recognized that the widest breach in the citadel of mutuality was rammed by Justice Traynor's opinion in Bernhard v. Bank of America, 19 Cal.2d 807, 811–813, 122 P. 2d 892, 894–895. Having explained why 'The criteria for determining who may assert a plea of *res judicata* differ fundamentally from the criteria for determining against whom a plea of *res judicata* may be asserted', and that there is 'no compelling reason * * * for requiring that the party asserting the plea of *res judicata* must have been a party, or in privity with a party, to the earlier litigation,' he said: "In determining the validity of a plea of *res judicata* three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party *against whom the plea* is asserted a party or in privity with a party to the prior adjudication?" (emphasis added) 327 F.2d at page 955.

In this case we have the identical question raised by CTI in New York which it seeks to raise here. It was raised by CTI in New York litigation in the manner permitted under the Civil Practice Act of that State. Although it related, in a sense, to a collateral issue in that litigation, this collateral issue was pursued to a conclusion at the behest of CTI. If the New York Court had accepted as true the contentions made by CTI it would have prevailed in the matter it was then urging on the New York Supreme Court. Rather, however, CTI did not prevail. The New York trial court held against CTI as to this point. It nowhere appears that CTI was in any way inhibited from making such additional or further or different form of proof than it relied on in presenting the affidavit with the attached exhibits of Mr. Kaslow. The issue was clearly drawn by the counter-affidavit of Mr. DeFren. The matter was then submitted to the trial court for determination and upon an adverse ruling,

it does not appear that on the subsequent appeal, CTI complained in any way that the issue should not have been decided on the merits by Mr. Justice Sarafite on the then state of the pleadings. The action of the trial court was affirmed in the Appellate Division so far as relates to the matter germane to this issue, and the Court of Appeals expressly affirmed it after denominating it one of three contentions urged before it by CTI.

We conclude that there was thus a final judgment on the merits on the identical issue that is here sought to be adjudicated and that CTI, *against whom the plea is here asserted* was obviously "a party * * * to the prior adjudication."

I conclude therefore that the basis for CTI's opposition to the motion for summary judgment in favor of the Indian Banks may not now be re-litigated and, there being no other material issue of fact on this principle issue in the case, the Banks' motion for summary judgment must be granted.

### ORDER ON MOTION TO QUASH SERVICE OF PROCESS

■ City Trade & Industries, Ltd., one of the defendants named in the interpleader proceedings brought by the plaintiff, James Talcott, Inc., filed its third-party action against New Central Jute Mills Co., Ltd., a corporation domiciled in India. The third-party proceeding was sanctioned by Honorable Frank M. Scarlett, Judge of this Court, subject to the motion to quash service. It is this motion which is now before the Court for consideration.

The record discloses that New Central Jute Mills Co., Ltd., is an Indian corporation with its representative in the United States located at 40 Worth Street, New York, N.Y. It has no representative and conducts no business within the state of Georgia nor anywhere across state lines within 100 miles of this District.

There is no federal statute or rule that provides for any different type of service upon a non-resident of the District dealing with this particular type of action. Service of process is, therefore, governed by Federal Rules of Civil Procedure, Rules 4 and 14. The only authority for service upon a party outside of the state or beyond 100 miles from the place in which the action is commenced is the provision of 47 which provides, 'Upon a defendant of any class referred to in paragraph 1 or 3 of this subdivision. of the Rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States, or in the manner prescribed by the law of the state in which the District Court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.'

Although the Georgia statutes have provisions for extra-territorial service in certain cases *in rem* the statute does not, and could not, constitutionally have any provision for the service upon non-residents, having less than the minimal local contacts sufficient to constitute the doing of business within the state, of service by publication or otherwise upon non-residents.

The judgment here sought is a judgment *in personam* against New Central Jute Corporation, Ltd. for any amounts which may be adjudged against C.T.I., in the interpleader action. While there may be some doubt as to whether the proceedings now pending in this court contemplate any possible judgment against C.T.I. by any other party before the Court, and there may be, therefore, some doubt as to whether a third party action could properly lie in any event, it is not necessary to reach this point.

I conclude that there is no provision by which service could be perfected in this proceeding in an action *in personam* against this foreign corporation outside the territorial limits providing for service under the Federal Statute.

The motion to quash is, therefore, granted, and the service of process heretofore sought to be perfected against New Central Jute Co., Ltd. is hereby quashed. The third-party complaint is dismissed for failure of service of process.

FINAL JUDGMENT ON ORDER GRANTING DEFENDANT BANKS' MOTION FOR SUMMARY JUDGMENT AND SUBSIDIARY MOTIONS

The defendant Banks, that is, the Allahabad Bank, Ltd., Bank of Baroda, Ltd. and Bank of Tokyo, having moved for summary judgment on the basis of the judgment of the Supreme Court of New York, New York County, Special Term, Part 1, which judgment has been affirmed by the Appellate Division of the said Supreme Court and also by the Court of Appeals of the State of New York, and after due deliberation and to carry out the opinion heretofore entered by me, it is

Ordered, adjudged and decreed that defendant Banks' motion for summary judgment is hereby granted and the Clerk of this Court will pay out all funds deposited in the registry of this Court by James Talcott, Inc., plaintiff, such funds being comprised of $622,367.-76 deposited on October 25, 1966 and $45,941.98 deposited on October 28, 1968 (this latter amount representing interest earned by plaintiff from a date on or about November 20, 1964 to October 25, 1966, while plaintiff was acting in a fiduciary capacity as an impartial trustee for the purpose of holding in escrow a fund of $622,367.76, which fund being that originally deposited in the registry of this Court by plaintiff on October 25, 1966), plus all interest earned thereon from August 4, 1967 in the case of those funds redeposited in the Citizens and Southern National Bank, and from August 15, 1967, in the case of those funds redeposited in The First National Bank of Brunswick, and from November 1, 1968, in the case of those funds redeposited in The Liberty National Bank & Trust Company, less the sum of $26,-067.56 previously disbursed by order of this Court. The Clerk will pay such funds in the following manner:

1. He shall first determine the total amount to be distributed hereunder;

2. He shall then determine the pro rata share of defendants, Allahabad Bank, Ltd., Bank of Baroda, Ltd. and Bank of Tokyo, by multiplying the total in number 1 immediately above by a fraction the numerator of which shall be, in the case of Allahabad Bank, Ltd., $344,015.26 (which is principal in the amount of $343,915.26 plus protest fees in the amount of $100.00), and in the case of Bank of Baroda, Ltd., $26,869.93 (which is principal in the amount of $26,850.94 plus protest fees in the amount of $18.99), and in the case of Bank of Tokyo, $169,404.11 (which is principal in the amount of $169,372.31 plus protest fees in the amount of $31.-80), and the denominator of which shall be $540,289.30 (which is the total principal amount of $540,138.51 plus the total protest fees of $150.79);

3. He shall then, at a date not sooner than ten (10) days after the entry of this judgment, issue a check to each of defendants, Allahabad Bank, Ltd., Bank of Baroda, Ltd. and Bank of Tokyo, in the amounts determined in number 2 immediately above. Provided, however, that before any such sums are disbursed, the Clerk shall have received a security bond in the form of Exhibit "A" hereto attached, for each of said Banks, from a company of national reputation and standing having an agent in Savannah, Georgia, the sufficiency of the sureties to said bond having been approved by the clerk of this Court. The principal amount of said bond shall be the sum of the payment plus 25% to cover interest to the date of final adjudication.

The claim of Sheriff Carl Griffin and John W. Sognier for payment of $2,500.-00 attorney's fee is not supported by any allegations in their move to intervene. Although the banks have not objected to such payment and, in their proposed or-

der, suggest that they be ordered to make such payment, this Court concludes that the motion of C.T.I. to dismiss this claim should be sustained, leaving to the banks the right to make any such payment out of their recoveries as they may consider warranted. This claim is therefore dismissed.

The motion for intervention by Loom-crafters, Inc. to intervene fails to allege a state of facts upon which relief can be granted and the said motion is denied, and the motion to dismiss by New Central Jute Mills Co., Ltd. is granted.

All other motions and requests for relief, insofar as they are inconsistent with this final judgment on the matters herein decided, are denied, and all former inconsistent orders are vacated.

It appearing that City Trade and Industries has heretofore filed Notice of Appeal, prior to the entry of this final judgment, and has now moved to withdraw the same, leave is hereby granted to C.T.I. to withdraw said Notice of Appeal filed October 28, 1969.

This Court expressly determines, as required by Rule 54(b) F.R.Civ.P., that there is no just reason for delay in entering final judgment on the matters herein decided and expressly states that this is a final judgment.